IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **MARIA ALLEN** | § |
| | § |
| v. | § Civil Action No. 2:23-cv-130 |
| | § |
| **MCLEMORE BUILDING** | § |
| **MAINTENANCE, INC.** | § |

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **MARIA ALLEN**, hereinafter referred to as "Plaintiff," bringing this cause of action under the Americans with Disabilities Act of 1990 (ADA) as Amended, Title VII, the Texas Commission on Human Rights Act, the Texas Labor Code, and the Rehabilitation Act against Defendant **MCLEMORE BUILDING MAINTENANCE, INC**. ("MBM"). For cause of action, Plaintiff respectfully shows unto the Court the following:

## I.
## PARTIES

1.  Plaintiff **MARIA ALLEN** is a former employee of the Defendant who sustained an on the job injury, who was discouraged from filing a worker's compensation claim, and who was ultimately terminated by Defendant.

1

2. Defendant **MCLEMORE BUILDING MAINTENANCE, INC.** is a Texas Corporation, doing business within the Southern District of Texas, Corpus Christi Division. Defendant may be served by serving its registered agent Curtis McLemore at 110 Fargo St. Houston, Texas 77006. A waiver of service has been requested.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's claims arising under federal laws under 28 U.S.C. §1331; specifically, her claims under the Americans with Disabilities Act as amended (ADA), Title VII, and the Rehabilitation Act.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

5. Venue in this district and division is proper under 28 U.S.C. § 1391(b)(2).

6. At the time of filing, damages are within the jurisdictional limits of the court.

## III.
## MISNOMER/MISIDENTIFICATION

7. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff

contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## RESPONDEAT SUPERIOR

8. Employees involved in this cause of action were, at all times described herein, employees of Defendant and were always acting in the course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of *Respondeat Superior*.

## V.
## FACTS

9. Plaintiff Maria Allen was hired by Defendant McLemore Building Maintenance (MBM) on or about August 11, 2017, as a custodian. Allen was assigned duties at schools in the Premont Independent School District in Premont, Texas. Her supervisor/manager was Pete Gonzalez.

10. In May of 2022, Allen was contacted by a co-worker Maria Garcia, who told her that the librarian at one of the schools they worked at was making anti-Semitic comments towards her and that the librarian was also making racially discriminatory comments about Mexicans.

11. Allen brought complaints to both the school and to her manager Pete Gonzalez. The school officials told her it was a "misunderstanding" and Gonzales

told Allen that he didn't want to do anything about it because he was afraid of losing the school's account.

12. On or about June 14, 2022, Allen was working with co-workers Maria Garcia and Kayla Rojas. Allen was showing the others how to use a burnisher machine, which is a high speed floor buffer.

13. Allen bent down to loosen a screw on the machine to lower the handle when the machine turned on and caught her right arm. This caused her to twist and the machine struck her head twice.

14. Garcia unplugged the machine to turn it off.

15. Allen felt pain and her right arm and fingers were caught in the cord.

16. Allen told the Facility Manager, Mr. Soliz that she needed to go to the emergency room for medical treatment. Soliz told her that she did not need to go to the ER and that she would be fine and that she could not go home.

17. Allen also called Pete Gonzales and told him what happened. Pete also said that Allen would be "ok" and that she needed to stay at work and that she could not go home.

18. The next day, June 15, 2022, Allen asked Rojas to drive her to get treatment at an urgent care clinic. However when they discussed what happened with the providers at the urgent care clinic, they were told that Allen needed to go to the ER.

19. Allen went to the ER where she was given a CAT scan and pain medication. Allen had suffered a concussion, strained right shoulder and contusions on her wrist fingers, shoulder and right side of her body.

20. On June 16, 2022 Allen saw her family doctor, Dr. Coleman. Dr. Coleman sent Allen to get an MRI. The MRI showed that Allen had a strained back and strained neck as well as damage to her discs. Allen's conditions limited her in the major life activities of bending, stooping, walking, and lifting.

21. Allen's doctor contacted worker's compensation to get her a claim number. When Pete Gonzales found out about this he told Allen he was against Allen filing a Worker's Compensation claim. Gonzales told her that he and Letty in HR would pay for Allen's ER visit. However, this did not happen.

22. On or about October 10, 2022 Allen had a meeting with Richard and Kelly two MBM supervisors and/or employees who were at the High School doing a walk through. They went to Allen's office to have a meeting about Kelly starting to work with Allen to help improve the crew.

23. Allen's office was also the place that the custodians working for MBM had to clock in and out of work.

24. Three custodians were returning from lunch during the time of the meeting. Richard told them that "we are busy in here." Allen told the custodians that they could use her phone to clock in.

25. During the meeting, Richard apologized to Allen for not being there more frequently to provide assistance.

26. On or about October 13, 2022, Allen went in the school's superintendent's office to drop off some donuts. There, she met a woman named Joselyn who was with MBM. They had a discussion and Allen told Joselyn that her supervisors would not come to see her on the job and were not providing support either at the job or with her on the job injuries.

27. Allen and Joselyn met in Allen's office and Allen told her about her on the job injuries and the accident. Joselyn told Allen to get all of her medical records from the ER, her doctors, and her prescriptions together and to bring them to a meeting with Joselyn the next day.

28. On or about October 14, 2022, Allen went to the follow up meeting with Joselyn. Joselyn asked Allen if she had all the medical records and Allen told her that she did and provided them to Joselyn.

29. Joselyn then told Allen that she was being terminated. Allen asked her why and was told that it was because she was using her phone to clock in and out. Allen explained to Joselyn that she had permission from her boss to use her phone to clock in and out. Joselyn replied that she did not care and that Allen needed to get out. Plaintiff asserts that this reason was a pretext or false reason for her termination.

30. In fact, Plaintiff was later informed, and believes, and therefore asserts that after her termination, other employees were told they would not be terminated for clocking in on their phones.

## VI.
## DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT, AS AMENDED AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

31. The evidence will show that:

    a. Plaintiff is perceived as disabled under the ADA and TCHRA or Texas Labor Code (back injury, shoulder injury);

    b. Plaintiff is qualified for her position;

    c. Plaintiff suffered an adverse employment action in that she was terminated; and

    d. The circumstances arising raise an inference of disability discrimination.

32. The evidence will also show that Defendant's reason(s) for taking adverse employment actions against Plaintiff's employment are pretextual. Defendant informed Plaintiff that she was terminated for using her phone to clock in and out of work. Other employees were not terminated for clocking in and out of work via their phones and were told they would not be terminated for doing so.

33. The evidence will further demonstrate that other employees without disabilities and/or that were not regarded or perceived as disabled were treated more favorably than Ms. Allen.

## VII.
## RETALIATION FOR REQUESTING ACCOMODATIONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

34. The evidence will show that:

   a. Plaintiff engaged in protected conduct under the ADA and TCHRA or Texas Labor Code;

   b. Plaintiff is qualified for her position;

   c. Plaintiff suffered an adverse employment action in that she was terminated, and,

   d. The circumstances arising raise an inference of retaliation discrimination.

35. The evidence will also show that Defendant's reason(s) for taking adverse employment actions against Plaintiff's employment are pretextual.

36. The evidence will further demonstrate that other employees without disabilities and/or that were not regarded or perceived as disabled were treated more favorably than Ms. Allen.

## VIII.
## RETALIATION FOR OPPOSING RACE DISCRIMINATION IN VIOLATION OF TITLE VII AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

37. The evidence will show that:

   a. Plaintiff engaged in protected conduct under Title VII when she opposed race discrimination;

   b. Plaintiff is qualified for her position;

8

      c. Plaintiff suffered an adverse employment action in that she was terminated, and,

      d. The circumstances arising raise an inference of retaliation discrimination.

38. The evidence will also show that Defendant's reason(s) for taking adverse employment actions against Plaintiff's employment are pretextual.

39. Plaintiff was terminated close in time to her opposition to race discrimination and Plaintiff's employer expressed a negative attitude towards her complaints of race discrimination. Defendant was more concerned about not offending the client than correcting their discriminatory conduct.

## IX.
## RETALIATION
## TEX. LABOR CODE §451.001, et seq.

40. Labor Code section 451.001 states that an employer may not discharge, or in any other manner discriminate, against an employee because that employee has filed a workers' compensation claim in good faith. *See* TEX. LAB.CODE ANN. § 451.001; Plaintiff alleges that as a result of the fact that she sought treatment and benefits under the Worker's Compensation Act for an on-the-job injury, Defendant retaliated against Plaintiff by terminating her.

41. The evidence will further demonstrate that those who made the decision to terminate Plaintiff knew that she had sustained on the job injuries, made efforts

9

to dissuade her from filing a Worker's Compensation claim, and terminated her when she again told them she had on the job injuries.

## X.
## DISCRIMINATION UNDER THE REHABILITATION ACT

42. To the extent Defendant receives any federal funds, Plaintiff asserts a claim under the Rehabilitation Act for discrimination and retaliation.

43. Plaintiff hereby incorporates the preceding paragraphs for all purposes.

44. Plaintiff is an individual with a disability, under the "regarded as" prong as defined by the REHABILITATION ACT, as amended, see 29 U.S.C. §705(20).

(1) Plaintiff was disabled (actually disabled and/or "regarded as" disabled) due to her back injury, shoulder injury

(2) Plaintiff is qualified for her position;

(3) Plaintiff suffered an adverse employment action in that she was terminated; and

(4) The circumstances raise an inference of disability discrimination.

45. Defendant violated the REHABILITATION ACT 29 U.S.C. §794(a), as amended, by discriminating against Plaintiff because of her disability/perceived disability under any program or activity receiving Federal financial assistance. In doing so, Defendant intentionally and with deliberate indifference to Plaintiff's federally protected rights.

46. Defendant's discriminatory acts violate 42 U.S.C. §1211 *et. seq.*, as amended, which are incorporated into the REHABILITATION ACT under 29 U.S.C. §794(d).

## XI.
## DAMAGES

47. Plaintiff alleges that as a direct and proximate result of the conduct and/or omissions on the part of the Defendant, she is entitled to recover at least the following legal damages:

   (1) Lost wages, past and future;

   (2) Compensatory Damages, including harm to professional reputation inconvenience, and mental anguish suffered in the past, and which, in all reasonable probability, which will be suffered in the future;

   (3) Reasonable attorney fees, expert fees and costs.

## XII.
## ADMINISTRATIVE FILINGS

48. Plaintiff filed her original verified complaint with the Equal Employment Opportunity Commission and the Texas Workforce Commission Civil Rights Division dually alleging that the Defendant had committed and unlawful employment action against Plaintiff.

49. Thereafter, Plaintiff received a Right to Sue letter the EEOC on her charge, giving Plaintiff notice of her right to sue Defendant within 90 days of its

receipt, attached hereto as **Exhibit "A."** Plaintiff timely filed her Plaintiff's Original Complaint.

## XIII.
## ATTORNEY FEES

50. Defendant's conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining counsel. Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

   (1) Preparation and trial of the claim, in an amount the jury deems reasonable;

   (2) Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

   (3) An appeal to the Court of Appeals, in an amount the jury deems reasonable;

   (4) Making or responding to an Application for Writ of Error to the Supreme Court, and attorneys' fees if application for Writ of Error is granted, in an amount the jury deems reasonable; and

   (5) Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## XIV.
## JURY DEMAND

51. Plaintiff further demands a trial by jury. A jury fee has been tendered.

## **PRAYER FOR RELIEF**

WHEREFORE, **MARIA ALLEN** requests Defendant be cited to appear and answer, and that on final trial, Allen have judgment against Defendant as follows:

(1) judgment against Defendant for Allen's actual damages, including lost wages and benefits (both front and back pay and/or equitable relief to include reinstatement, if feasible);

(2) judgment against Defendant for compensatory damages in the maximum amount allowed by law;

(3) pre-judgment and post-judgment interest at the maximum allowed by law;

(4) costs of suit, including attorneys' fees; and

(5) such other and further relief, both at law and in equity, to which Allen may be justly entitled.

**Respectfully Submitted,**

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Road,**
**Suite 109**
**San Antonio, Texas 78229-3550**
**Telephone: (210) 212-7979**
**Facsimile: (210) 212-5880**


BY:  */s/ Alan Braun*
    **ADAM PONCIO**
    **STATE BAR NO. 16109800**
    **Southern District ID 194847**
    **salaw@msn.com**
    **ALAN BRAUN**
    **STATE BAR NO. 24054488**
    **Southern District ID 14218056**
    **abraun@ponciolaw.com**

**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT A

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

San Antonio Field Office
5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229
(210) 640-7530
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: **02/16/2023**

**To:** Maria Allen
472 County Road 410
Falfurrias, TX 78355

Charge No: 451-2023-00919
EEOC Representative and email:    Sybil Edwards, Investigator
Sybil.edwards@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 451-2023-00919.

On behalf of the Commission,

*for* Norma J. Guzman, Field Director

Cc:

Adam Poncio
Poncio Law Offices
5410 Fredericksburg Road, Ste 109
San Antonio, TX 78229
Salaw@msn.com

Please retain this notice for your records.